UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **CHRISTINA M. ZAPPA** § | |
|     *Plaintiff.* § | |
| § | |
| v. § | **CIVIL ACTION NO.  1:15-cv-00631** |
| § | |
| **HARTFORD LIFE AND ACCIDENT** § | |
| **INSURANCE CO.,** § | |
|     *Defendant* § | |
| § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Christina M. Zappa ("Plaintiff") files this Plaintiff's Original Complaint against Hartford Life and Accident Insurance Co. ("Defendant").

### I.
### Introduction

1.     This Complaint challenges the Defendant's unlawful revocation and denial of Plaintiff's long-term disability benefits. Plaintiff is filing this action to recover benefits due under a policy of insurance to enforce the present rights existing therein, to declare her rights under the terms of the policy, and to recover costs and attorney's fees as provided by ERISA.

### II.
### Jurisdiction and Venue

2.     This action against Defendant arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq*.

3.     Plaintiff alleges that Plaintiff's claims "relate to" an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C.A. §§ 1001 *et seq*. and that the subject Plan constitutes a "plan under ERISA" (hereinafter referred to as "the Plan"). Therefore, Plaintiff alleges that this Court's jurisdiction is invoked pursuant to 28 U.S.C.A. § 1337 and 29 U.S.C.A. § 1132(e).

4. Venue is proper in this District pursuant to 29 U.S.C § 1132(e)(2), because this is a District where the Defendant may be found or where the breach took place. Defendant was paying and Plaintiff was receiving—and, but for Defendants' breach, Plaintiff would have continued receiving—her benefits in this District in Austin, Texas.

## III.
## Parties

5. Plaintiff is an individual resident of Leander, Texas who was employed by PricewaterhouseCoopers, which provided long term disability ("LTD") benefits though the Plan.

6. Defendant, an insurance company licensed to do business in Texas, issued a group LTD benefits policy to Plaintiff's employer. Defendant is the Claims Administrator for the Plan.

## IV. Factual Background

7. In 2007, Plaintiff was seriously injured in a fall in a parking lot.

8. Plaintiff submitted a claim for disability benefits under the Plan.

9. Plaintiff's claim, initially for short-term disability benefits, was approved by Defendant and Plaintiff began receiving such benefits.

10. Effective February 18, 2009, Plaintiff's claim for LTD benefits was approved and Plaintiff began receiving such LTD benefits.

11. Plaintiff also filed and ultimately settled a lawsuit (*Christina Baker v. Star Parking, Inc. et al.*) regarding her fall against certain third-parties she alleged were responsible for the condition of the parking lot and her injuries and damages.

12. Plaintiff's LTD benefits under the Plan are potentially subject to an offset *to the extent she receives money in settlement of a lawsuit to compensate her for loss of income.*

13. Plaintiff's lawsuit expressly sought a variety of damages and not just loss of income: medical expenses in the past; medical expenses in the future; pain, suffering and mental anguish

in the past; pain, suffering and mental anguish in the future; impairment in past and future; prejudgment and postjudgment interest; costs of suit; lost wages in past and loss of future earning capacity; and all other relief, in law and in equity, to which Plaintiff was entitled.

14. Plaintiff's settlement of the lawsuit expressly compensated her for and obligated her to release a broad variety of claims for damages and not just those for loss of income. For example, the settlement agreement recites that Plaintiff "sought to recover monetary damages on account of alleged personal physical injury." In exchange for the money provided by the settlement, Plaintiff released "any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, and whether for compensatory punitive damages, which the plaintiff now has, which may hereafter accrue or otherwise be on account of, or in any way growing out of, or which are the subject of the incident alleged or the subject matter of the Complaint (and all related pleadings), including, without limitation, any and all known or unknown claims tor bodily and personal injuries to the Plaintiff, or any future wrongful death claim of Plaintiff's representative, which have resulted or may result from the alleged acts or omissions of the Defendants" in the lawsuit. The settlement agreement also specifies that "All sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104(a) (2) of the Internal Revenue Code and physical injuries or physical sickness within the meaning of Section 130 (e) of the Internal Revenue Code."

15. Shortly after Plaintiff settled her lawsuit, Plaintiff notified Defendant of the amount of the settlement and provided Defendant with a copy of the settlement agreement. Plaintiff provided Defendant all information requested and required of her by Defendant. Plaintiff specifically

provided Defendant with all information requested and required of her regarding the settlement of her lawsuit, *Christina Baker v. Star Parking, Inc. et al.*

16. In April of 2010, Defendant determined that the settlement in the lawsuit compensated Plaintiff for her considerable physical injuries and "not lost wages":

> 04/07/2010 02:35:21 p.m. ET Tammy K Kaufman Examiner Minneapolis CLAIM MANAGEMENT
> Recommendation/Plan: Examiner Claim Management Plan     Sign off required: N
>
> 0: Rcvd copy of settlement w/ confidential portions redacted
> Also diary to request med update and to req written status from SSd of retropay
>
> Page 4 of settlement states:
> "All sums set forth her in constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104 .... . and physical injuries or physical sickness within the meaning of Section 103 .... "
>
> A: Though we were not provided with the amt of settlement, we did rcv portion that states the sum is paid for damages from personal physical injuries or sickness. ***This is not lost wage's. As such, it will not impact EE's LTD benefits***.
> No further fup.[1]

17. As Defendant had determined Plaintiff's settlement was "paid for damages from personal physical injuries" and not for "lost wages," Defendant accordingly determined in April of 2010 that the settlement did not impact Plaintiff's LTD benefits and Defendant thus proceeded to pay such benefits for the next five years to Plaintiff.

18. Plaintiff justifiably assumed the matter was resolved, and, among other things, did not attempt to identify or sue any other parties that may have been potentially liable for her damages.

19. Defendant paid LTD benefits under the Plan to Plaintiff from about February 2009 until early 2015 without any reduction or adjustment due to Plaintiffs settlement of her lawsuit.

---

[1] *See* Exhibit A hereto, a true and correct copy of "Page 54" of Defendant's "Summary Detail Report" for Plaintiff's claim (emphasis added).

20. At regular intervals as requested and required by Defendant from 2009 to 2015, Plaintiff provided all information requested and required of her by Defendant. From 2009 to 2015, Plaintiff consistently disclosed to Defendant her ongoing payments from the lawsuit settlement every year.

21. Shockingly, five years later and despite relying on the very same information (and <u>only that same information</u>), Defendant abruptly revoked Plaintiff's LTD benefits. Defendant sent Plaintiff a letter dated February 4, 2015, stating that "no additional [LTD] payments are due to you at this time"). The letter quoted various portions of the Plan but never explained why Defendant was reversing its determination made five years earlier.

22. Defendant's February 4, 2015 letter was premised on a fiction—conveniently fabricated by Defendant—that Plaintiff's claim for LTD benefits that had been determined five years ago was instead pending and under review. (*E.g.*, "We completed our review of the Settlement document you provided to us …" "Review of your claim …"). In fact, the "Settlement document you provided to us" is the very same settlement agreement Plaintiff had provided to Defendant five years ago and reviewed by Defendant five years ago.

23. At no time prior to February 4, 2015 did Defendant ever suggest to Plaintiff that Plaintiff's LTD benefits might be impacted by her lawsuit settlement, much less that there was a question as to whether or what amount of that settlement might be considered compensation for loss of income.

24. Defendant's February 4, 2015 letter to Plaintiff included the following

> If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us **within one hundred eighty (180) days from the receipt of this letter.** Your appeal letter should be signed, dated and clearly state your position. […] Along with your appeal letter, **you may submit written comments, documents, records and other information related to your claim**.

25. Plaintiff received Defendant's letter dated February 4, 2015 on February 10, 2015 and 180 days later is August 9, 2015.

26. As Defendant was clearly pretending that its sudden reversal of its long ago prior decision was instead the resolution of a pending claim, Plaintiff first sent notice of her intent to "appeal" to Defendant on March 11, 2015. Plaintiff's notice of appeal reminded Defendant—consistent with Defendant's own determination five years ago—that Plaintiff's settlement five years ago was for Plaintiff's physical injures and pointed out that Defendant had failed to explain any particular basis for suddenly reversing course and revoking Plaintiff's benefits.

26. Without explanation, Defendant responded by letter dated March 26, 2015 that "the decision to reduce [Plaintiff's] LTD benefit by the amount of her monthly settlement annuity payment was appropriate, and therefore, the decision will stand."

27. Defendant's March 26, 2015 letter stated that Plaintiff's "LTD claim *remains open.*"

28. On May 8, 2015 and well before 180 day period set forth in Defendant's February 4, 2014 letter had expired, Plaintiff submitted to Defendant an affidavit from her attorney in her previously-settled lawsuit explaining the settlement money was not to compensate Plaintiff for loss of income; instead loss of income was but a fraction of the damages sought and compensated by the settlement. *See* Exhibit B.

29. On July 13, 2015 and well before the 180 day period set forth in Defendant's February 4, 2014 letter expired, Plaintiff submitted to Defendant: Plaintiff's First Amended Original Petition, Cause No. 09-01877-A, *Christina Baker v. Star Parking, Inc. et al.*, Plaintiff's Supplemental Responses to Defendants' Request for Disclosure and Expert Designation, Cause No. 09-01877-A, *Christina Baker v. Star Parking, Inc. et al.*, and Report of Dr. Thomas H. Mayor in *Christina Baker v. Star Parking, Inc. et al. See* Exhibit C and attachments thereto.

30.     Plaintiff's July 13, 2015 letter (which, again, was well before the 180 day period set forth in Defendant's February 4, 2014 letter expired) also further explained Plaintiff's position as follows:

> (A)     There is no basis at all for concluding that 100% of the settlement was to compensate Plaintiff for loss of income.
>
> (B)     To suddenly announce it had reached an opposite conclusion five years later and based on the same facts is the very essence of acting arbitrary and capricious.
>
> (C)     This issue was resolved (properly) years ago. Defendant had no right to simply raise the issue anew (after five years) and change your prior determination. This is especially true given that Defendant purported to reverse the decision without any new evidence that was not available to it and considered by it five years ago.
>
> (D)     Defendant long ago waived any right to, for example: (a) claim Plaintiff failed to "provide proof satisfactory to [you] of […] the amount attributed to loss of income" in the settlement; (b) "assume the entire sum to be for loss of income"; and/or (c) withhold future benefit payments.
>
> (E)     Even assuming *arguendo* it is appropriate at this stage to determine that the settlement included an amount for loss of income, the amount attributed to recovery for loss would be less than 6% of amounts received by Plaintiff under the settlement. Plaintiff's $17,120,657 in damages at issue in the lawsuit included: past medical expenses $203,914.12; future medical expenses $290,966; loss of income: $1,008,000, loss of household services $617,777, physical impairment $5,000,000, pain and suffering $5,000,000, and mental anguish: $5,000,000. Damages due to loss of income represented less than 6% of her damages at issue in the lawsuit and, if an amount of the settlement is to be attributed to loss of income, it should be approximately 6% of total amounts received by Plaintiff under the settlement.
>
> (F)     Even assuming *arguendo* the use of an inappropriately conservative (under the circumstances) measure of noneconomic damages based only 2X Plaintiff's economic damages (*i.e.* assuming non-economic economic damages of only $4,241,314), Plaintiff's damages due to loss of income would still represent less than 24% of her damages at issue in the lawsuit. Using such an inappropriately conservative measure of noneconomic damages, the amount of the settlement attributed to loss of income would be approximately 24% of the amounts received by Plaintiff under the settlement.
>
> (G)     Additionally and alternatively, the revocation of benefits is improper under present circumstances because Plaintiff has obviously not been "made whole."

31. By letter dated July 14, 2015, Defendant responded to Plaintiff by first acknowledging that Plaintiff "submitted additional documentation and request for review of the claim again on 07/13/15" and then stating that "[t]he information you submitted, while appreciated, does not alter our decision of 03/26/15."

**V. Requests for Relief**
**Count One**
**Claim for Benefits**

32. Plaintiff incorporates the preceding allegations as though set forth herein.

33. Plaintiff is entitled to LTD benefits.

34. Plaintiff has complied with Plaintiff's obligations to be entitled to such benefits.

35. All conditions precedent to the relief sought have occurred or been performed.

36. There is no basis at all for concluding that 100% of the settlement was to compensate Plaintiff for loss of income.

37. To suddenly announce it had reached an opposite conclusion five years later and based on the same facts is the very essence of acting arbitrary and capricious.[2]

38. This issue was resolved (properly) years ago. Defendant had no right to simply raise the issue anew (after five years) and change its prior determination. This is especially true given that

---

[2] *See, e.g. Smith v. Aetna Life Ins. Co.*, No. 13-CV-02888-MSK-MEH, 2015 WL 1509685, at *9 (D. Colo. Mar. 30, 2015) ("Regardless of whether Aetna or Mr. Smith bears the burden of showing the purposes for which the settlement was paid, the record reflects that Mr. Smith has presented some evidence on this point, and Aetna has presented none. In such circumstances, ***Aetna's conclusion that the settlement necessarily included compensation for wage losses is unsupported by the record and is arbitrary and capricious***. Even assuming that the settlement amount reflected some unspecified portion of lost wages, Aetna's decision to simply presume that amount to be 50% of the settlement is also arbitrary.") (Emphasis added); *see also, Cherene v. First Am. Fin. Corp. Long-Term Disability Plan*, 303 F. Supp. 2d 1030, 1039 (N.D. Cal. 2004) (remanding because ***Hartford "had no support for its conclusion that all of the [settlement] was for loss of income"*** where Hartford had improperly "'assumed' the entire sum to be for loss of income" simply because it determined the claimant had "failed to provide Hartford with satisfactory proof as to how much of the settlement amount was attributed to loss of income"; "Additionally, ***Hartford's own auditor had earlier determined*** that only a portion of the settlement agreement was deductible, and there is no explanation for Hartford's decision or need to assume otherwise.") (Emphasis added).

Defendant purported to reverse the decision without any new evidence that was not available to it and considered by it five years ago.

39. Alternatively, Defendant long ago waived any right to, for example: (a) claim that Plaintiff failed to "provide proof satisfactory to [Defendant] of […] the amount attributed to loss of income" in the settlement; (b) "assume the entire sum to be for loss of income"; and/or (c) withhold future benefit payments.[3]

40. Alternatively, even assuming *arguendo* it is appropriate at this stage to determine that the settlement included an amount for loss of income, the amount that should be attributed to recovery for loss of income is less than 6% of amounts received by Plaintiff under the settlement.

41. Alternatively, even assuming *arguendo* the use of an inappropriately conservative (under the circumstances) measure of noneconomic damages based only 2X Plaintiff's economic damages, the amount of the settlement attributed to loss of income would be approximately 24% of the amounts received by Plaintiff under the settlement.

42. Additionally and alternatively, the revocation of benefits is improper under present circumstances because Plaintiff has obviously not been "made whole."[4] The Plan is silent as to whether you are entitled to withhold benefits based on a settlement even when the claimant has not been "made whole." The plan does no clearly demonstrate "a specific rejection of the make whole doctrine" An ERISA plan overrides the make whole doctrine only if it includes language "specifically allow[ing] the Plan the right of first reimbursement out of any recovery [the

---

[3] *See, gen., Rhorer v. Raytheon Eng'rs & Constrs.*, 181 F.3d 634 (5th Cir.1999); *Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351 (5th Cir.1991); *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.,* 695 F.2d 940, 947 (5th Cir.1982); *see also e.g, Harris Methodist Fort Worth v. Sales Support Servs., Inc.,* No. 4:01-CV-567-Y, 2007 WL 5011899, at *1 (N.D. Tex. Dec. 20, 2007).

[4] *See, gen., Copeland Oaks v. Haupt*, 209 F.3d 811, 813–14 (6th Cir.2000); *Cagle v. Bruner*, 112 F.3d 1510, 1521–22 (11th Cir.1997); *Barnes v. Indep. Auto. Dealers Ass'n of Cal.*, 64 F.3d 1389,1394–95 (9th Cir.1995).

participant] was able to obtain <u>even if [the participant] were not made whole</u>." The plan at issue fails to include any such "even if" language. Plaintiff's damages greatly exceeded—under any standard—the small settlement she accepted only due to difficulties in establishing liability in the lawsuit. The "make whole" doctrine applies, and Defendant's decision to pay no benefits at all must not stand.

43. The standard of review is de novo as Defendant is not granted discretion and/or such discretion is voided by Texas Law, 28 TEX ADMIN. CODE § 3.1201 *et seq*. Defendant's decision to revoke and deny Plaintiff's benefits was wrong.

44. In the alternative, Defendant's decision to revoke and deny Plaintiff's benefits was arbitrary and capricious.

45. Plaintiff seeks from Defendant benefits which have not been paid to Plaintiff.

## In the alternative, Request for Remand

46. In the purported denial letter, Defendant failed to identify any basis for suddenly reversing its decision made five years earlier that the settlement did not impact Plaintiff's claim for LTD benefits, thus denying Plaintiff any reasonable opportunity to respond.

47. Defendant used unqualified and/or biased record reviewers.

48. Defendant failed to consider all information submitted by Plaintiff within 180 days after Plaintiff received the letter stating that her benefits were being abruptly revoked.

49. Plaintiff requests that the Court award Plaintiff benefits which have not been paid or in the alternative, remand this claim to Defendant so that Defendant can identify the basis for suddenly reversing its decision made five years earlier that the settlement did not impact Plaintiff's claim for LTD benefits and provide Plaintiff a reasonable opportunity to respond; use qualified/unbiased

record reviewers; and consider all information submitted by Plaintiff within 180 days after Plaintiff received the letter stating that her benefits were being abruptly revoked.

### Count Two
### Attorney's Fees

50. Plaintiff incorporates the preceding allegations as though set forth herein.

51. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff seeks an award of Plaintiff's reasonable and necessary court costs, and attorney's fees in connection with the prosecution of this action.

### Jury Demand

52. Plaintiff hereby demands a jury trial.

### PRAYER

WHEREFORE, Plaintiff demands judgment as follows:

A. For a declaration regarding the Defendant's noncompliance with minimum requirements of ERISA and other federal and state laws in connection with the denial of benefits;

B. For benefits payable under the Plan to reimburse Plaintiff for payments that Plaintiff has been entitled to receive;

C. For future benefits payable under the Plan Plaintiff is entitled to receive;

D. For an award of prejudgment interest;

E. In the alternative, that Plaintiff's claim be remanded as set forth above;

F. For an award of reasonable attorney's fees pursuant to 29 U.S.C.A. § 1132(g)(1);

G. For costs incurred;

H. For such other and further relief as the Court deems appropriate.

Respectfully submitted,

*/s/ William F. Blankenship III*
William F. Blankenship III
Texas Bar No. 90001483
William F. Blankenship III, P.C.
3210 McKinney Avenue, Suite 100
Dallas, Texas 75204
214.361.7500
214.361.7505 (Fax)
bill@blankenshiplaw.com

**ATTORNEY FOR PLAINTIFF**